IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CALVIN C. DIXON | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. H-04-170 |
| | § | |
| ALBEMARLE CORPORATION, | § | |
| | § | |
| Defendant. | § | |

## ORDER

Pending before the Court are Plaintiff's Motion for Leave to Supplement Summary Judgment Response (Document No. 48) and Defendant's Motion for Summary Judgment (Document No. 26). Having considered the motions, submissions, and applicable law, the Court determines that Plaintiff's Motion for Leave to Supplement Summary Judgment Response should be granted and Defendant's Motion for Summary Judgment should be granted in part and denied in part.

## BACKGROUND

Plaintiff Calvin C. Dixon ("Dixon") worked as an operator at Albemarle Corporation's ("Albemarle") Pasadena, Texas chemical plan from April 4, 1984 until his termination on March 3, 2003. In March 2002, Dixon transferred divisions and began working in the aluminum powder area of the Albemarle facility. After his transfer, Dixon alleges he began to experience problems with his shift supervisor, Brad

Lutter ("Lutter").  On one occasion in late 2002, Lutter allegedly refused to allow Dixon to leave work to seek medical treatment.  Dixon also avers that, prior to his termination, Lutter stated that employees who missed work due to illness would not be protected from termination.  Dixon further alleges that Lutter played a large role in Albemarle's decision to terminate Dixon's employment.

During the night of January 11, 2003, while working at the Albemarle facility, Dixon allegedly made errors in the handling of water samples.  Albemarle asserts that these errors could have had serious legal consequences for the company.  Albemarle thereafter conducted an investigation into the events surrounding the incident and concluded that Dixon lied about the mistakes made on the night of January 11, 2003.  Albemarle further surmised that Dixon falsified company records to support his story of the events.  Albemarle terminated Dixon's employment on March 3, 2003.  After Dixon's termination, evidence surfaced that Dixon had not falsified any records.  Nevertheless, Albemarle chose not to reinstate Dixon's employment.

On January 21, 2003, while Albemarle continued its investigation into the events surrounding the water sample incident, Dixon made a formal request to the Albemarle Human Resources Department seeking a transfer out of the aluminum area of the plant for health reasons.  The request was a culmination of events that began in August 2002, when Dixon informed Dr. William Ledlie ("Dr. Ledlie"), Albemarle's company

2

physician, that he had been diagnosed with the lung disease silicosis.[1]  Because of his belief that the airborne particulate matter present in the aluminum powder area exacerbated his silicosis, Dixon began exploring the possibility of a transfer to another area of the Albemarle facility.  Dixon sought Dr. Ledlie's assistance in obtaining authorization for a transfer.

On January 31, 2003, after Dixon made a formal request for transfer, Dr. Ledlie sent a letter to Albemarle Human Resources. In the letter, Dr. Ledlie acknowledged that Dixon's silicosis was not clinically significant, but asked Human Resources to transfer Dixon to another area of the facility as a precautionary measure.  On February 4, 2003, after receipt of Dr. Ledlie's letter, Albemarle placed Dixon on leave under the Family and Medical Leave Act.  On March 3, 2003, Albemarle terminated Dixon while he was out on leave.

On January 15, 2004, Dixon filed the instant lawsuit asserting a multitude of claims against Albemarle.  During the pendency of this case, Dixon decided not to pursue many of the claims in his original complaint.[2]  The only claims that remain are

---

[1]Silicosis is a lung disease caused by inhalation of large amounts of silica. Dixon makes no allegations that his silicosis was caused by the conditions at Albemarle.

[2]Accordingly, based on Dixon's representations, the Court will not address claims asserting: violations of the Age Discrimination in Employment Act; retaliation in violation of Title VII and the Texas Labor Code;  and Worker's Compensation retaliation.

those asserting: (1) violations of the Americans with Disabilities Act, 42 U.S.C. §

12101 *et seq.* (2000) ("ADA") and the Texas Commission on Human Rights Act, TEX.

LAB. CODE ANN. § 21.001 *et seq.*(Vernon 1996) ("TCHRA"); (2) violations of the

Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq.* (2000) ("FMLA"); and

(3) violations of the Employee Retirement Income Security Act, 29 U.S.C. § 1140 *et

seq*. (2000) ("ERISA").  On March 31, 2005, Albemarle filed the instant motion for

summary judgment arguing Dixon's remaining claims should be dismissed.

<u>STANDARD OF REVIEW</u>

Summary judgment is proper when "there is no genuine issue as to any material

fact and [] the moving party is entitled to a judgment as a matter of law."  FED. R. CIV.

P. 56(c).  The court must view the evidence in a light most favorable to the non-

movant.  *Coleman v. Houston Indep. Sch. Dist.*, 113 F.3d 528, 533 (5th Cir. 1997).

Initially, the movant bears the burden of presenting the basis for the motion and the

elements of the causes of action upon which the non-movant will be unable to establish

a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

The burden then shifts to the non-movant to come "forward with 'specific facts

showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith

Radio Corp.*, 475 U.S. 574, 586-87 (1986) (quoting FED. R. CIV. P. 56(e)).  "A dispute

about a material fact is 'genuine' if the evidence is such that a reasonable jury could

4

return a verdict for the nonmoving party." *Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 956 (5th Cir. 1993) (citation omitted). The non-movant's bare assertions, standing alone, are insufficient to create a material issue of fact and defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Conclusory allegations unsupported by specific facts will not prevent an award of summary judgment; the plaintiff cannot rest on his allegations to get to a jury without any significant probative evidence tending to support the complaint. *Nat'l Ass'n of Gov't Employees v. City Pub. Serv. Bd. of San Antonio*, 40 F.3d 698, 713 (5th Cir. 1994). Thus, the non-movant's burden cannot be satisfied by conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a scintilla of evidence. *Doe v. Dallas Indep. Sch. Dist.*, 153 F.3d 211, 215 (5th Cir. 1998). It is not the function of the court to search the record on the non-movant's behalf for evidence which may raise a fact issue. *Topalian v. Ehrman*, 954 F.2d 1125, 1137 n.30 (5th Cir. 1992).

## LAW AND ANALYSIS

### ADA Discrimination

Dixon alleges he was disabled or, in the alternative, Albemarle regarded him as being disabled, and Albemarle discriminated against him and ultimately terminated him because of his disability in violation of the ADA and TCHRA. *See* 42 U.S.C. § 12101

*et seq.* ; TEXAS LABOR CODE ANN. § 21.001 *et seq.*  Because Dixon presents only circumstantial evidence of disability discrimination, the Court must apply the *McDonnell Douglas* burden shifting analysis to his ADA claim.  *See Gowesky v. Singing River Hosp. Sys.,* 321 F.3d 503, 511 (5th Cir. 2003).  First, the plaintiff must establish the *prima facie* case for discrimination.  *Id.*  If the plaintiff demonstrates a *prima facie* case, the burden shifts to the employer to provide a legitimate, non-discriminatory reason for the adverse employment action.  *Id.*  If the employer provides a non-discriminatory reason for the employment action, the plaintiff must then demonstrate by a preponderance of the evidence that the reasons advanced by the employer are merely a pretext for the underlying discrimination. *Id.*

## *Prima Facie Case*

To establish a *prima facie* case of discrimination under the ADA, the plaintiff must demonstrate "(1) [h]e is disabled or regarded as disabled; (2) he is qualified for the job; (3) he was subjected to an adverse employment action on account of his disability; and (4) he was replaced by or treated less favorably than non-disabled employees." *Id.*

To satisfy the first element of the *prima facie* case, Dixon must show either his silicosis substantially limits a major life activity or Albemarle regarded Dixon as having a disability because of the silicosis.  *See*  42 U.S.C. § 12102(2)*;* TEX. LAB. CODE ANN.

6

§ 21.002(6).[3]  Dixon advances both theories in an attempt to establish his *prima facie* case.  First, Dixon argues his silicosis and accompanying diminished lung capacity substantially limit the major life activities of breathing and sleeping.[4]    The determination of whether an individual suffers from a disability must be determined on a case by case basis.  *Albertson's, Inc. v. Kirkingberg,*  527 U.S. 555, 566 (1999). Breathing is a "major life activity" within the meaning of the statute, and the Court will also assume, for the purposes of its analysis, that sleeping is a major life activity.  *See* 29 C.F.R. § 1630.2(i) ("Major Life Activities means functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working").  Substantially limits means:

> (i) Unable to perform a major life activity that the average person in the general population can perform; or
>
> (ii) Significantly restricted as to the condition, manner or duration under which an individual can perform a major life activity as compared to the

---

[3]Disability is defined under the ADA as: "a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such impairment." 42 U.S.C. § 12102(2). The Texas Labor Code defines disability in a nearly identical fashion. *See* TEX. LAB. CODE ANN. § 21.002(6).  The Court will therefore analyze the meaning of disability under both the ADA and TCHRA.  *See Talk v. Delta Airlines, Inc.,* 134 F.3d 1021, 1024 (5th Cir. 1999) (indicating that a showing of disability is the threshold issue in both ADA and TCHRA claims).

[4]Dixon appears to argue that his disability stems from his diminished lung capacity and the other problems associated with his silicosis. The Court will refer to Dixon's silicosis and the accompanying effects of the disease as Dixon's "lung impairment."

condition, manner or duration under which the average person in the general population can perform the same major life activity. [5]

29 C.F.R. § 1630.2(j)(1)(i)(ii).  With regard to the substantially limits inquiry, courts recognize that to qualify as a disability, "[t]he effects of an impairment must be severe." *Waldrip v. Gen. Elec. Co.*, 325 F.3d 652, 656 (5th Cir. 2003).  The substantially limits aspect of analysis is the linchpin of the ADA analysis, because without requiring a demonstration of a substantial limitation "the ADA would cover any minor impairment that might tangentially affect major life activities such as breathing, eating, and walking." *Id.*

Dixon cites to his own deposition testimony in support of his position that his lung impairment qualifies as a disability.  Dixon describes in general terms his health issues.  For example, Dixon avers he needs to use a breathing machine because of sleep apnea.  He further asserts he is frequently tired and cannot exert himself.

Dixon also relies heavily on his interactions with Dr. Ledlie to establish his lung condition as a disability.  Dixon indicates that Dr. Ledlie informed him that he had a

---

[5] Plaintiff has not alleged he is substantially limited in working. *See Sutton v. United Air Lines, Inc.,* 527 U.S. 471, 492 (1999) ("When the major life activity under consideration is that of working, the statutory phrase 'substantially limits' requires, at a minimum, that plaintiffs allege they are unable to work in a broad class of jobs."). Because Dixon has not alleged he is unable to work a broad range of jobs, the Court will not *sua sponte* address the question of whether he is substantially limited in his ability to work.

"28 to 38 percent lung capacity loss."  Moreover, Dixon points to the July 31, 2003 letter from Dr. Ledlie to the Albemarle Human Resources Department, indicating Dixon's diagnosis as suffering from silicosis.  The letter further indicates that Dixon told Dr. Ledlie he had missed work because of lung infections that were slow to heal. However, in reviewing Dixon's silicosis, Dr. Ledlie indicates that "[Dixon's] condition is currently mild and may never become clinically significant." Dr. Ledlie does not make, nor does he attempt to make, a connection between Dixon's lung infections, the silicosis, and an impact on Dixon's ability to breathe or sleep.

The final piece of evidence upon which Dixon places substantial reliance is a May 6, 2005 determination by an administrative law judge that Dixon was, for the purposes of the Social Security Act, disabled between January 26, 2003 and December 1, 2004.[6]  The administrative law judge's order discusses a medical examination evincing that Dixon suffers from silicosis and sleep apnea. However, the administrative law judge's determination of disability is not based solely, or even in large part, upon Dixon's silicosis.  In addition to silicosis, the opinion also cites degenerative disk disease, obesity, anxiety, and depression as severe medically determinable impairments that prevented Dixon from engaging in substantial gainful activity between January 26,

---

[6]Plaintiff's Motion for Leave to Supplement Summary Judgment Response (Document No. 48) is granted and will be considered to assist the Court in its analysis of the issues at bar.

2003 and December 1, 2004. The administrative law judge also determined that Dixon could return to work after December 1, 2004.

Viewing all the evidence in the light most favorable to Dixon, the Court determines he fails to allege facts that would support the conclusion that he has a disability within the meaning of the ADA or the TCHRA.  Dixon cannot establish that he is substantially limited in his breathing or sleeping.  Indeed, Dixon fails to demonstrate how his ability to breathe or sleep have been substantially limited more than the average individual.  The Court recognizes that Dixon suffers from silicosis. However, Dixon fails to make a connection between the silicosis and a substantial limitation in his ability to sleep or breathe.

Rather than indicating how he is limited in breathing and sleeping, Dixon, through his own testimony, asserts that "he becomes 'disoriented' and cannot 'exert' himself and that he has to use a breathing machine at night for sleep apnea and that he is frequently tired."  Although these are problems that indicate some possible limitations on the major life functions of breathing and sleeping, Dixon's testimony fails to present evidence of the impact these limitations have on Dixon's ability to breathe or sleep.

The statements and writings attributable to Dr. Ledlie, even if construed in a light most favorable to Dixon, further fail to present evidence that would allow a finding of

10

a substantial limitation.  Dr. Ledlie, in a physical evaluation conducted on October 2, 2002, indicated Dixon was fit for employment without physical limitations despite the fact that Dr. Ledlie expressly recognized Dixon suffers from silicosis.  Indeed, Dr. Ledlie, through the examination records and via the January 31, 2003 letter, indicates Dixon's condition is mild and clinically insignificant.  The strongest evidence attributable to Dr. Ledlie is his alleged statement that Dixon suffers from a 28 to 38 percent lung capacity loss.  However, Dixon fails to show that such a loss of lung capacity contributes to a *substantial limitation* in his ability to breathe or sleep. Indeed, courts have recognized that diminished lung capacity, without a showing of substantial limitation, is insufficient to show a disability.  *See Robinson v. Global Marine Drilling Co.,* 101 F.3d 35, 37 n.2 (5th Cir. 1996) (indicating that 50 percent lung capacity loss due to asbestosis did not require a finding of a disability).

Finally, the administrative law judge's order does not discuss or provide any evidence regarding the extent of the limitations on Dixon's breathing or sleeping. Nothing in the order indicates Dixon's breathing or sleeping are substantially limited by his lung condition.  The designation of Dixon as disabled by the administrative law judge appears to be based on Dixon's other conditions, most of which are not at issue here.  Moreover, the disability found by the administrative law judge was necessarily temporary because Dixon was deemed fit to return to work as of

11

December 1, 2004.  Further, the administrative law judge's opinion scarcely discusses the breathing or sleeping difficulties experienced by Dixon. Thus, the administrative order fails to demonstrate that Dixon's lung impairment qualifies as a substantial limitation.

In short, Dixon fails to present evidence that his condition substantially limits his ability to breathe or sleep in a way that would distinguish him from an average individual in the general population.  Dixon's failure to provide evidence of substantial limitation makes the case at bar analogous to *Robinson v. Global Marine Drilling Company,* 101 F.3d at 37.   In *Robinson,* the plaintiff suffered from asbestosis and allegedly had a 50 percent diminished lung capacity.  *Id.*  However,  the United States Court of Appeals for the Fifth Circuit recognized that the few instances of shortness of breath proffered by the plaintiff did not raise his impairment to the level of a disability protected under the ADA despite his lung impairment.  *Id.* Applying the same rationale here, the Court determines Dixon's generalized incidents of chest congestion, breathing difficulty, and sleep apnea are insufficient to demonstrate a disability, because Dixon has failed to present any evidence of the extent of the such limitations. *Waldrip*, 325 F.3d at 656 ("a plaintiff must prove a substantial limit with specific evidence that *his particular* impairment substantially limits *his particular* major life activity."). Accordingly, the Court determines Dixon is not disabled within the meaning of the

ADA or the TCHRA.

In addition to arguing that he suffers from a disability, Dixon argues Albemarle regarded him as having a disability. To successfully advance this theory, Dixon must demonstrate that Albemarle regarded him as "significantly restricted in his ability to perform a class or broad range of jobs." *See Hamilton v. Southwestern Bell Tel. Co.,* 136 F.3d 1047, 1051-52 (5th Cir. 1998). An employee is regarded as disabled if: (1) the employee has an impairment which is not substantially limiting but the employer perceives him to have a substantially limiting impairment; (2) the employee's impairment is substantially limiting only because of the attitudes of others; or (3) the employee has no impairment, but the employer perceives that the employee has a substantially limiting impairment. *Waldrip*, 325 F.3d at 657. Although Dixon broadly alleges that Albemarle regarded him as being disabled, he fails to direct the Court to supporting evidence in his response to the motion for summary judgment. Indeed, Dixon fails to provide evidence that would support any of the three possible avenues of proving such discrimination. Accordingly, the Court determines Dixon fails to demonstrate that Albemarle regarded him as being disabled. Given the foregoing, Dixon failed to establish that he has a disability or that Albemarle regarded him as disabled. Therefore, Dixon's claims asserting disability discrimination under both the

ADA and TCHRA fail, and summary judgment is granted on such claims.[7]

## ERISA Claim

Dixon next asserts Albemarle terminated him in retaliation for filing short term disability benefits and to deny him long term benefits in violation of ERISA, 29 U.S.C. § 1140 *et seq.* ERISA makes it unlawful for an employer to discharge or discriminate against a plan participant for the purpose of denying the participant the right to benefits under a plan covered by the statute.[8] 29 U.S.C. § 1140. To establish an ERISA claim, Dixon must demonstrate Albemarle discharged him "with the specific intent of interfering with . . . ERISA benefits." *Perdue v. Burger King Corp.,* 7 F.3d 1251, 1255 (5th Cir. 1993). Here, Dixon directs the Court to no evidence that Albemarle terminated Dixon with the intent of denying him ERISA benefits. In fact, Dixon does not point to any evidence directly relating to his ERISA claim. Accordingly, the Court grants summary judgment on Dixon's ERISA claim.

---

[7] Dixon also argues that Albemarle failed to accommodate his disability. *See* 42 U.S.C. § 12112(b)(5)(A) (indicating an employer must make reasonable accommodations for individuals with disabilities). However, the Court's determination that Dixon failed to demonstrate he had a disability within the meaning of the ADA is fatal to his claims for failure to provide reasonable accommodations. *See Blanks v. Southwestern Bell Communications, Inc.,* 310 F.3d 398, 402 (5th Cir. 2002) (indicating no ADA protection makes analysis of reasonable accommodation argument unnecessary).

[8] Although Albemarle asserts that the plan at bar is not covered by ERISA, Dixon's failure to provide any evidence that Albemarle discharged him in order to deny him benefits makes the determination of whether the plan is covered unnecessary.

**FMLA Claim**

Finally, Dixon asserts Albemarle terminated him in retaliation for taking leave under the FMLA, 29 U.S.C. § 2601 *et seq.*  As the Court determines there are genuine issues of material fact that need to be resolved with regard to Dixon's FMLA claim, the Court denies summary judgment.  Given the foregoing, the Court hereby

ORDERS that Plaintiff's Motion for Leave to Supplement Summary Judgment Response (Document No. 48) is GRANTED. The Court further

ORDERS that Defendant's Motion for Summary Judgment (Document No. 26) is GRANTED with respect to Dixon's claims alleging violations of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.,* the Texas Commission on Human Rights Act, TEX. LAB. CODE ANN. § 21.001 *et seq.*, and the Employee Retirement Income Security Act, 29 U.S.C. § 1140 *et seq.*  The Court further

ORDERS Defendant's Motion for Summary Judgment (Document No. 26) is DENIED with respect to Dixon's claim asserting a violation of the Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq.* [9]

---

[9]Accordingly, the only claim that remains is Dixon's FMLA claim.

15

SIGNED at Houston, Texas, on this __7th__ day of June, 2005.

_____

DAVID HITTNER

United States District Judge